UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VICTOR LAMOUNT JONES,

                Plaintiff,

v.

KENT COUNTY CORRECTIONAL
FACILITY et al.,

                Defendants.
_____/

Case No. 1:24-cv-765

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a Kent County Correctional Facility prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>**Discussion**</u>

**I.    Factual Allegations**

Plaintiff is presently incarcerated in the Kent County Correctional Facility in Grand Rapids, Michigan. On June 9, 2024, six days after Plaintiff was sentenced, he was taken to the Emergency Department at St. Mary's Hospital in Grand Rapids, Michigan. Plaintiff alleges that he was "having [a] medical issue that the correctional facility does not have the equi[p]ment to handle." (Compl., ECF No. 1, PageID.3.) Plaintiff does not identify the "medical issue."

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff reports that a nurse practitioner, presumably at St. Mary's, informed deputies that Plaintiff needed surgery as soon as possible. Plaintiff has been "in extreme pain ever since." (*Id.*) Plaintiff states that medical staff at the facility have ignored him on the following dates:

> June 14, 2024 – Plaintiff "asked nurse for cre[am] or pain medic[ine and] was denied both."
>
> June 16, 17, 18, 2024 – Plaintiff "request[ed] ice pack[s] from one unidentif[ied] nurse and contract employee Shadra."
>
> June 20, 2024 – Plaintiff "was placed in [the] behavioral pod by [an] unidentified mental health employee but returned to [the] original pod by 6/21/2024."
>
> June 25, 2024 – Plaintiff was "refused medical treatment by unidentified medical employee."
>
> No specific date – Plaintiff "requested medical help from Deput[ies] Badillo, Bowerman, [and] Ross in addition to two other unidentified officers but [they] refuse[d] or lied to [Plaintiff] about contacting medical services."

(*Id.*) Plaintiff acknowledges that he received some form of treatment, but he claims that "most or all treatments administer[ed] inten[s]ified pain or cause[d] discomfort[]." (*Id.*) On June 27, 2024, Plaintiff passed out from the pain, he was not provided treatment, an ambulance was called, but it was "cancelled on arrival." (*Id.*)

Plaintiff names four Defendants in the caption of the complaint: the "Kent County Correctional Facility," the "Vital Care Medical Staff of KCCF," the "Cornwell Health Group," and St. Mary's Hospital. (*Id.*, PageID.1.)[2]

Plaintiff seeks $513,800,000.00 for pain and suffering damages and an immediate release from custody.

---

[2] The listing of defendants in the complaint is only slightly different. In the body of the complaint, rather than naming the Kent County Correctional Facility as a defendant, Plaintiff names the Kent County Correctional Staff. (Compl., ECF No. 1, PageID.2.)

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    The Named Defendants

*Pro se* pleadings are to be liberally construed, but even liberal construction has its bounds. Federal Rule of Civil Procedure 10(a) requires that the Plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Plaintiff refers to individuals in his complaint, and even accuses them of improper actions, but those individuals are not named in the title of the complaint. This Court has concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10 CV 568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action); *Schorn v. Mack*, No. 94-1747, 1995 WL 37931 (6th Cir. Jan. 31, 1995) (affirming district court's dismissal of complaint which included dismissal of a party named as a defendant in the body of the complaint, but not named as a defendant in the caption, and affirming the district court's decision to not allow amendment to correct the omission). Accordingly, the Court will look only to the caption of the complaint to determine the defendants against whom Plaintiff is attempting to state a claim.

####      A.      Kent County Correctional Facility

The Kent County Correctional Facility is a building, not an entity capable of being sued in its own right. *See, e.g.*, *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . .").

For that reason alone, Plaintiff's claim against the Kent County Correctional Facility is properly dismissed.

Even if the Court assumes that Plaintiff intended to sue Kent County, rather than the Kent County Correctional Facility, he fails to state a claim. Kent County may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, the county is liable only when an official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson*, 40 F. App'x at 89 (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508.

Here, although Plaintiff's complaint describes potential wrongdoing by corrections staff at the Kent County Correctional Facility, Plaintiff fails to allege the existence of a custom or policy, let alone that any policy or custom was the moving force behind his alleged constitutional injuries.

7

*Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of Section 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Because Plaintiff fails to allege the existence of a policy or custom, Plaintiff fails to state a claim against Kent County.

For the reasons set forth above, the Court will dismiss Plaintiff's claims against the Kent County Correctional Facility (or Kent County, if that was Plaintiff's intended defendant).

## B. Vital Care Staff of KCCF

Plaintiff references "Vital Core" as an entity that, apparently, employs healthcare providers who provide services to prisoners at the Kent County Correctional Facility. To the extent Plaintiff intended to impose liability on Vital Core, the entity, he has failed to state a claim. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid Section 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of Section 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations).

As noted above, "there is no vicarious liability based on the acts of [an entity's] employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, the entity "can be sued under § 1983 only when a policy or custom of that [entity] caused the injury in question." *Id.* (citations omitted). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of

that policy. *Turner*, 412 F.3d at 639. Plaintiff has not made any allegations that he was harmed by application of a Vital Core policy or custom; therefore, he has failed to state a claim against Vital Core.

To the extent Plaintiff intended to impose liability collectively on the entire healthcare staff employed by Vital Care at the Kent County Correctional Facility, he has failed to state a claim. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Accordingly, Plaintiff's claims against Vital Core are properly dismissed for failure to state a claim.

### C.    Cornwell Health Group

In the caption of Plaintiff's complaint, he identifies Cornwell Health Group as a defendant. When listing the Defendants in this suit, he offers the following additional information:

Position or Title[:] Medical Staff

Place of Employment[:] Northwest Pavilion

Address[:] 80 Southwest Division

Official and/or personal capacity? 60,000 patient(s)

(Compl., ECF No. 1, PageID.2.) It seems likely that Plaintiff is referring to Corewell Health. That entity, however, does not have a "Northwest Pavilion." *See* https://www.spectrumhealth. org/locations (last visited Aug. 1, 2024). There is a Corewell "South Pavilion," and the address of that facility is similar—80 68th Street SW—to the address Plaintiff provides—80 Southwest

Division.[3] Because it appears that Plaintiff intended to name Corewell Health, the Court will reference this defendant by that name.

Whether Plaintiff meant Cornwell Health Group or Corewell Health does not make much of a difference because, other than identifying the entity in the caption and including the entity in the list of Defendants, Plaintiff does not make any allegations against Cornwell, Corewell, or staff of either entity in the body of the complaint.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684 (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against

---

[3] There is no such address because there is no "Southwest" Division. There is a "South" Division, but there is no address of 80 South Division.

those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff's allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") with regard to this Defendant or any staff members of this Defendant.

Moreover, Plaintiff's claim against Corewell Health would fall short for another reason. This Court has recognized that Spectrum Health, now Corewell Health,[4] is a private healthcare organization, not a department of the State of Michigan or the County of Kent. Plaintiff must allege facts that support an inference that Corewell Health was acting under color of state law. *See, e.g.*, *Van Dyke v. Grand Rapids Cmty. Coll.,* 1:18-cv-470, 2018 WL 6427296, at *2 (W.D. Mich. Dec. 7, 2018) (concluding that the plaintiff could not succeed on her claim against Spectrum because she had alleged no facts indicating that Spectrum acted under color of state law). Because Plaintiff has made no factual allegations regarding anything Corewell Health has done or failed to do, he has plainly not shown that Corewell Health is acting under color of state law.

Accordingly, Plaintiff's claims against Corewell (or Cornwell) Health will be dismissed for failure to state a claim.

### D.      St. Mary's Hospital

St Mary's Hospital is mentioned in the body of Plaintiff's complaint. On June 9, 2024, Plaintiff was transported there to address his "medical issue." (Compl., ECF No. 1, PageID.3.) Plaintiff makes no further allegations regarding St. Mary's Hospital except to note that the nurse practitioner there told the deputies that Plaintiff needed surgery as soon as possible. (*Id.*)

---

[4] *See Dove v. Corewell Health f/k/a Spectrum Health System*, No. 1:23-cv-182, 2023 WL 6548556 (W.D. Mich. Oct. 6, 2023).

St. Mary's Hospital is also a private hospital. *See Ellis v. City of Grand Rapids*, 257 F.

Supp. 564, 569–70 (W.D. Mich. 1966) (describing St. Mary's as a "private sectarian hospital").[5]

Plaintiff has not alleged that St. Mary's Hospital acted under color of state law. The fact that St.

Mary's Hospital provided healthcare services to a state prisoner, standing alone, is not enough. As

the Sixth Circuit explained in *Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021):

> To decide whether a seemingly private party is a "state" actor, the Supreme Court
> has applied different tests in different settings. *Id*. In this prison setting, the Court
> has opted for a "public-function" test. *See West*, 487 U.S. at 55–56, 108 S.Ct. 2250;
> *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014). It has recognized that
> the states can privatize most functions (like the provision of electricity or education)
> without turning the parties who take on these tasks into "government" agents. *See
> Manhattan Cmty. Access Corp. v. Halleck*, ⸺ U.S. ⸺, 139 S. Ct. 1921, 1928–
> 29, 204 L.Ed.2d 405 (2019). Yet a few public functions—those the government has
> "traditionally and exclusively" performed—cannot be delegated to private parties
> in this way without the Constitution's limits accompanying the delegation. *Miller*,
> 982 F.3d at 423 (citation omitted).
>
> The Court has extended this public-function logic to some doctors who care for
> prisoners. The Constitution does not generally impose a positive duty on states to
> offer medical care to those within their jurisdictions. *See DeShaney v. Winnebago
> Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249
> (1989). When, however, a state imprisons individuals and deprives them of the
> liberty to care for themselves, it takes on a "duty" through the Eighth Amendment
> to ensure their wellbeing. *Id*. at 199–200, 109 S.Ct. 998. And states may not entirely
> outsource this constitutional duty to a private entity. *Halleck*, 139 S. Ct. at 1929
> n.1. The Supreme Court thus held that an orthopedic specialist became a state actor
> when he operated a clinic providing twice-a-week care to inmates at a prison
> hospital. *West*, 487 U.S. at 44, 56–57, 108 S.Ct. 2250. Although this doctor saw
> many other patients, he had "voluntarily assumed" the state's "obligation to provide
> adequate medical care to" inmates by entering into a contract for that care. *Id*. at
> 56–57, 108 S.Ct. 2250. Our court likewise held that a psychiatrist who saw a pretrial
> detainee was a state actor because she offered her services under a formal
> agreement with the county. *See Carl*, 763 F.3d at 596–97. (Given these decisions,
> the doctors in this case who worked for Correct Care Solutions do not dispute that
> they were state actors.)

---

[5] More recently, St. Mary's has been described as a business name for Trinity Health Corporation.
*Loewen v. Grand Rapids Med. Educ. Partners*, 1:10-cv-1284, 2012 WL 1190145, at *1 (W.D.
Mich. Apr. 9, 2012).

At the same time, private parties do not automatically become "state" actors simply by caring for prisoners. Consider a hospital with an emergency room that generally must treat all patients who seek care for life-threatening conditions. *See* 42 U.S.C. § 1395dd. Does this hospital become a state actor whenever a prisoner gets rushed there for a medical emergency? The Seventh Circuit has held to the contrary, reasoning that the hospital had not voluntarily agreed to accept the state's "special responsibility" to its prisoners. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827–28, 831 (7th Cir. 2009).

We have likewise emphasized the lack of a contract between a state and a doctor when finding that the doctor was not a state actor. *See Scott v. Ambani*, 577 F.3d 642, 649 (6th Cir. 2009). In *Scott*, a prison doctor referred an inmate with cancer to an outside hospital for radiation treatment. *Id*. at 645, 649. We found that the hospital oncologist who treated the prisoner was not a state actor because there was "no contractual relationship" between the oncologist and the state. Id. at 649. The prison doctor had referred the patient to the hospital generally, so the prisoner could have been treated by any of the staff oncologists. *Id*. The state also had no influence over the oncologist's care of the prisoner; she decided on the proper treatment based solely on "her own training, experience, and independent medical judgment." *Id*.

*Id*. at 532–33. Plaintiff has not alleged any facts that might permit the Court to infer that St. Mary's Hospital was a state actor on June 9, 2024, when Plaintiff was treated at the hospital.

Accordingly, Plaintiff has failed to state a Section 1983 claim against St. Mary's Hospital.

## IV.   Release from Custody

Plaintiff challenges the fact of his confinement. (Application, ECF No. 4, PageID.16 ("I am falsely imprisoned in KCCF").) Moreover, Plaintiff specifically requests the relief of immediate release from custody. (Compl., ECF No. 1, PageID.4.) "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of [42 U.S.C.]

§ 1983."). The Sixth Circuit recently elaborated on when a prisoner must use habeas corpus under these authorities:

> A clear and consistent two-part rule emerges from this precedential backdrop. Prisoners can "use only habeas corpus" if "they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson* [*v. Dotson*], 544 U.S. [74,] 81, 125 S. Ct. 1242 [(2005)].

*Kitchen v. Whitmer*, 106 F.4th 525, 539 (6th Cir. 2024).

Plaintiff seeks immediate release. Thus, under the first part of the *Kitchen* test, he must pursue that relief in a habeas corpus petition. Plaintiff also seeks damages. That "is not an appropriate or available federal remedy" in a habeas corpus action. *Preiser*, 411 U.S. at 494. Instead, "a damages action by a state prisoner could be brought under the Civil Rights Act . . . ." *Id*. Plaintiff cannot seek both types of relief in one action. Courts generally have been reluctant to allow hybrid civil rights/habeas actions, given that civil rights actions and habeas petitions have distinct purposes and contain unique procedural requirements that make a hybrid action difficult to manage. *See Spencer v. Barret*, No. 14-10823, 2015 WL 4528052, at *4 (E.D. Mich. July 27, 2015); *see also Moore v. Pemberton*, 110 F.3d 22, 24 (7th Cir. 1997) (discussing that the reasons for not allowing a prisoner to transform a Section 1983 action into one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of Section 1915(g)); *Dunbar v. Rozen*, No. 1:18-cv-617, 2019 WL 3213757, at *2 (W.D. Mich. July 17, 2019) (holding that a "hybrid" action involving both civil rights and habeas claims "presents significant problems," and courts typically have directed prisoners to file separate actions (citing *Kirk v. Jablonski*, No. 18-cv-288, 2019 WL 1283009, at *1 (D.N.M. Mar. 20, 2019). Plaintiff is free to

14

file a separate habeas petition under 28 U.S.C. § 2254; however, the Court notes that if Plaintiff were to file such a petition at the present time it would be properly dismissed as unexhausted.

Because Plaintiff cannot seek immediate release in this action, he has failed to state a claim upon which that relief may be granted. His request for that relief is properly dismissed for that additional reason.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). While Plaintiff may have a legitimate claim against other defendants that his medical need is serious and has not been properly treated, he has not pled it in this complaint.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   August 13, 2024                          /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  United States Magistrate Judge